IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RICHARD L. BIBBS,

                Plaintiff,

v.                                    CIVIL ACTION NO.   5:11-cv-00519

NEW RIVER COMMUNITY AND
TECHNICAL COLLEGE, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendants' Motion to Dismiss Plaintiff's Amended Complaint* (Document 66), the *Defendants' Motion for Summary Judgment* (Document 115), the Plaintiff's Responses in Opposition (Documents 89 & 120), the Defendants' Replies (Documents 100 & 124), and the supportive memoranda in this case.   By Standing Order (Document 5) entered on August 1, 2011, this action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636.   On August 2, 2011, this action was transferred from the Charleston Division to the Beckley Division of the United States District Court for the Southern District of West Virginia, and, pursuant to the Standing Order, the referral was transferred to the Honorable R. Clarke VanDervort, United States Magistrate Judge.

On August 23, 2013, the Magistrate Judge submitted his *Proposed Findings and Recommendation* (PF&R) (Document 151), wherein he recommended that the Defendants'

1

Motion to Dismiss be merged with their Motion for Summary Judgment, and that the Motion for Summary Judgment be granted.   On August 27, 2013, this Court considered the recommended "merger" of the Defendants' two motions (Document 152), and ordered that the *Defendants Motion to Dismiss Plaintiff's Amended Complaint* (Document 66) be terminated as moot.   The Court now considers the balance of the PF&R relative to the Defendants' Motion for Summary Judgment and the Plaintiff's *Objections* thereto (Document 155).     After careful consideration and a thorough review of the filings in this case, the Court finds, for the reasons stated herein, that the Plaintiff's objections to the PF&R should be sustained in part and overruled in part.   The Defendants' Motion for Summary Judgment, likewise, is granted in part and denied in part.

## I.     BACKGROUND

Magistrate Judge VanDervort's PF&R (Document 151) provides a detailed account of the Plaintiff's claims, the Defendants' Motions, and the Plaintiff's Responses.   The Court now incorporates by reference those facts and history.   To provide context for the ruling herein, however, the Court provides the following summary.

On August 1, 2011, the Plaintiff, Richard Bibbs, an African-American male, filed a Complaint in the United States District Court in the Southern District of West Virginia.   (Pl.'s Compl., Document 2.)   Therein, he alleges that the Defendants, New River Community and Technical College (NRCTC) and its employees, failed to hire him because of his race and/or gender in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[1]   Mr. Bibbs obtained a right-to-sue letter from the

---

1 The Plaintiff has since withdrawn his Fourteenth Amendment claim, which the Court does not address.

Equal Employment Opportunity Commission (EEOC) and filed it with his Complaint. Meanwhile, Mr. Bibbs continued applying for clerical and administrative positions with NRCTC for which he was not hired. He obtained another right-to-sue letter and, on August 6, 2012, moved to amend his Complaint to address the additional positions. (Pl.'s Mot. to Am., Document 33.) Magistrate Judge VanDervort granted the Plaintiff's Motion to Amend on September 12, 2012. (Order, Document 55.) In his Amended Complaint (Document 57), Mr. Bibbs added the allegation that the Defendants refused to hire him in retaliation for his first complaint of discrimination with the EEOC. In total, Mr. Bibbs applied for sixteen positions at the New River Community and Technical College between October 2009 and May 2012. He was interviewed for two positions, but was never hired. Mr. Bibbs continues to allege discrimination with respect to eight of the positions for which he applied. (Pl.'s Mem. Resp. to Defs.' MSJ, Document 121.)

The eight positions still at issue[2] are: (1) Administrative Associate, posted October 26, 2009; (2) Financial Aid Counselor, posted December 8, 2009; (3) Human Resources Representative, posted January 10, 2010; (4)Administrative Secretary, posted August 20, 2010; (5) Human Resource Assistant III, with an original closing date of September 20, 2010; (6) Records Assistant III, posted September 30, 2011; (7) Administrative Secretary, posted March 2012; (8) Administrative Associate, posted March 4, 2012. (*See* Pl.'s Mem. Resp. to MSJ, at 8–21.) Magistrate Judge VanDervort exhaustively summarized the parties' evidence and arguments

---

2 The PF&R addressed nine positions. However, the Plaintiff stated that he would not pursue his claim with regard to a Human Resource Secretary position posted October 25, 2012 "due to a lack of discovery for [the] position." (Pl.'s Mem. Resp. to Def.s' MSJ at 18, Document 121). In addition, the Plaintiff states in his Objections to the PF&R that "Although plaintiff has not addressed the other 9 positions, he does not concede that summary judgment is appropriate for those positions. Plaintiff intend[s] to address the other 9 positions during trial to support the evidence and exhibits presented for the 8 positions addressed herein." (Pl.'s Objections at 13–14, Document 155.) Because the Plaintiff has not pursued those positions or presented evidence to establish pretext with regard to the Defendants' asserted reasons for hiring others, the Court will not consider them herein. However, the Court notes that the Defendants' decisions and procedures as applied to positions that are no longer part of this case may be relevant to alleged discriminatory intent with respect to those positions still in litigation.

with respect to each of these positions in his PF&R, and the Court incorporates his summary of those positions herein by reference. (PF&R at 15–28.)   In brief summary, the facts and continuing disputes as to each position are as follows:

(1) Administrative Associate (posted October 2009):   NRCTC hired a white female who had been working as an Administrative Secretary at NRCTC.   There is continuing dispute as to precisely how long she had been there and whether she qualified for promotion as an internal applicant pursuant to West Virginia Code 18B-7-1(d), which provides that preference should be given to internal applicants.   The Defendants contend that she received the highest ranking by the selection committee, in addition to being qualified for promotion as an internal candidate.

(2) Financial Aid Counselor (posed December 2009):   NRCTC hired a white female. There is ongoing dispute as to whether she should have received preference based on her limited training and experience in financial aid; Mr. Bibbs contends that she had no more relevant experience or training than he did, and that his Master's Degree combined with more experience in a higher education setting would have received more weight absent discrimination.

(3) Human Resources Representative (posted January 2010):   NRCTC hired a white female, and asserts that Mr. Bibbs did not meet the minimum qualifications for this position because he lacks Human Resources experience.   Mr. Bibbs argues that (a) he is more qualified than the candidate selected, and (b) other (female) candidates received substitutions for minimum qualifications based on relevant experience or education, and he should have received similar treatment for this position.

4

(4) Administrative Secretary (posted August 2010):   NRCTC interviewed Mr. Bibbs for this position, but ultimately hired a black female who had been employed in another position at NRCTC.   Mr. Bibbs claims both discrimination and retaliation with regard to this position.   He contends that a member of the selection committee knew the person hired and was biased in her favor.   In addition, Mr. Bibbs contends that he was more qualified than the person hired and that NRCTC unfairly substituted work experience for minimum education requirements for her, while not doing the same for him when he did not directly meet the minimum requirements for other positions. NRCTC states that it hired the most qualified person and notes that the selected candidate scored significantly higher in the interview than Mr. Bibbs.

(5) Human Resources Assistant III (original closing date of September 20, 2010): NRCTC hired a white female who was employed at NRCTC in another capacity and who had an MBA with a concentration in Human Resources (HR).   Mr. Bibbs alleges that she applied after the closing date, while his late applications for other positions no longer at issue were not considered.   NRCTC contends that the position was re-listed and that the selected applicant applied within the deadline.   NRCTC found that Mr. Bibbs did not meet the minimum qualifications for the positions because he had no HR experience; Mr. Bibbs states that his education and work experience should have been substituted for the required HR experience.   NRCTC argues that it hired the most qualified candidate.

(6) Records Assistant III (posted September 2011):   NRCTC hired a white female who was employed at NRCTC in another capacity.   There is dispute between the parties as

5

to (1) whether the person ultimately hired met the minimum requirements for the position, (2) whether Mr. Bibbs's application materials specified that he had data entry experience, and (3) whether the person ultimately hired was more qualified than Mr. Bibbs.

(7) Administrative Associate (posted March 2012):   NRCTC hired a white female who had previously worked at NRCTC in another capacity.   NRCTC found that Mr. Bibbs did not meet the minimum qualifications for the position; he contends that he did, and that even if he did not, he had relevant experience that should have been substituted. There is dispute between the parties as to whether the selected person submitted her application on time and whether Mr. Bibbs is more qualified than the selected applicant.

(8) Administrative Secretary (posted February 2012):   NRCTC hired a black female who had previously worked as a temporary employee at NRCTC.   Mr. Bibbs was interviewed but not selected for the position; NRCTC states that he was ranked third by the selection committee.   There is a factual dispute as to whether the person hired met the minimum requirements of the position and whether she was more qualified than Mr. Bibbs.   In addition, Mr. Bibbs argues that for this and other positions, NRCTC counted part-time work as full-time experience for female applicants.   NRCTC substituted experience for education for the person hired; Mr. Bibbs argues that this substitution is further evidence of discrimination, as similar substitutions were not made for his benefit.

To summarize the parties' positions, the Defendants argue that Mr. Bibbs was not hired because he was not the most qualified applicant for any of the positions for which he applied. With respect to certain positions, the Defendants state that Mr. Bibbs was not considered because he either applied after the deadline or did not meet the minimum qualifications. Mr. Bibbs argues that the Defendants' justifications for failing to hire him are pretext for discrimination and asserts that he was more qualified than the selected candidates for the eight positions still at issue. In addition, Mr. Bibbs alleges that NRCTC treated him differently than white and/or female applicants with regard to late applications, substitutions of relevant education or experience to meet the minimum requirements for advertised positions, and consideration of relevant experience or education not specifically listed as either required or preferred (i.e., Mr. Bibbs' Master's Degree, which he argues was not considered while NRCTC seemed to consider non-required advanced degrees an advantage for white and/or female candidates). In addition, Mr. Bibbs has presented statistics showing the numbers and percentages of males and African Americans in comparison to females and Caucasians employed at NRCTC. NRCTC argues that these statistics show that it hires minorities in numbers proportional to their representation in the state population, while Mr. Bibbs argues that the statistics show that NRCTC discriminates against minorities and, at least in clerical and administrative job categories, against men.

With respect to the two positions for which NRCTC found that the Plaintiff did not meet the minimum qualifications, the Magistrate Judge found that the Plaintiff failed to make a *prima facie* case for discrimination. (PF&R at 36-37, Document 151.) In addition, the Magistrate Judge found that the Plaintiff failed to set forth a *prima facie* case for race-based discrimination for the two positions that NRCTC filled with black female applicants. (*Id.* at 36.)

For the remaining claims, the Magistrate Judge found that the Defendants' stated reasons for hiring others were sufficient to rebut the Plaintiff's *prima facie* case and that the Plaintiff failed to produce evidence of discrimination. (*Id.* at 39–41.)   The Magistrate Judge recommends granting summary judgment to the Defendants because the "Plaintiff has not produced any evidence indicating that Defendants' reasons for hiring other persons than him are false and that the real reason for doing so was discrimination."   (*Id.* at 40.)   "Absent a discriminatory motive, an employer has discretion in weighing the qualifications of applicants for open positions."   (*Id.* at 35.)   For positions in which retaliation is at issue, the Magistrate Judge found that the Plaintiff "has not shown any causal connection between his filing of the EEOC Complaint and Defendants' decisions to hire other persons than him to fill the positions."   (*Id.* at 42.)

The Plaintiff objects to essentially all of the legal findings contained in the PF&R.   He argues that he has presented a genuine question of material fact through, among other things, his allegations regarding beneficial substitutions of education and experience given to white and/or female applicants, but not to him, to fulfill the minimum requirements of positions.   For those positions that he undisputedly set forth a *prima facie* case, Mr. Bibbs states that direct evidence of discrimination or retaliation is not required, and that the facts and evidence he has presented establish genuine questions of material fact sufficient to overcome the Defendants' motion for summary judgment.   He argues that whether he was more qualified than the selected candidates is a genuine question of material fact because a finding that he is more qualified would support the conclusion that the Defendants' asserted reason for not hiring him is pretextual.   The Court finds that the *pro se* Plaintiff is correct and that summary judgment should be denied for the majority of the claims in this case.

## II.       STANDARD OF REVIEW

### A.   Review of Proposed Findings and Recommendations

Although the Court has adopted and incorporated factual portions of the Magistrate Judge's PF&R, the Court will conduct a *de novo* review of the legal conclusions contained therein. This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard of review, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).   When reviewing portions of the PF&R *de novo*, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.   *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

### B.   Motion for Summary Judgment Standard of Review

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   A "material fact" is a fact that might affect the outcome of a party's case.

*Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.   *Id.*

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   *Celotex*, 477 U.S. at 322-23.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."   *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."   *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).   In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D.W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986).   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   In the context of employment discrimination cases, "courts must take special care…because motive often is the critical issue." *Ballinger v. N. Carolina Agr. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987).   A defendant can obtain summary judgment either by demonstrating that the plaintiff failed to establish a prima

10

facie case or by demonstrating that there is no factual dispute surrounding the defendant's proffered legitimate nondiscriminatory explanation. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### III.    DISCUSSION

A.  *Title VII and Section 1981 Discrimination Claims*

The Plaintiff first alleges that NRCTC, by refusing to hire him, discriminated against him in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a)), 42 U.S.C. § 1981(a), and the Civil Rights Act of 1991 (which amended the Civil Rights Act of 1964 and § 1981, as well as other legal provisions).   He alleges discrimination on the basis of both race and gender.   (Pl.'s Am. Compl. ¶ 89, 90, Document 57.)   The Plaintiff's "case is based upon [the] disparate treatment theory."   (Pl.'s Mem. Resp. to Def.s' MSJ at 28, Document 121.)   Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer—
>
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).   Section 1981(a) provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

11

> property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981(a). Section 1981a sets forth recovery provisions, limits damages, and permits jury trials.

The legal framework for an employment discrimination case is the same under both Title VII and Section 1981, and the Court will consider these claims together. *Bryan v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 543 (4th Cir. 2003); *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *Thompson v. Administrative Office of the Supreme Court of Appeals of W.Va.*, 2004 WL 3266044 (S. D. W. Va.) (Copenhaver, J.). Plaintiffs may present claims under either a disparate treatment theory or a disparate impact theory. This case involves a disparate treatment claim. Disparate treatment cases involve allegations "that an employer has treated that particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988). For disparate treatment cases, the plaintiff bears the burden of proving that an employer's negative employment decision resulted from intentional discrimination against him because of his membership in a protected class. 42 U.S.C. § 2000e-2(a); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

Plaintiffs may prove their cases using the framework set forth in *McDonnell Douglas v. Green.* 411 U.S. 792 (1973). First, the plaintiff must establish a *prima facie* case of discrimination "by showing (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the

employer continued to seek applicants from persons of complainant's qualifications."   *Id.* at 802. After the Plaintiff establishes the *prima facie* case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [plaintiff's] rejection."   *Id.*   After the employer has presented its legitimate, nondiscriminatory reason, the plaintiff must "be afforded a fair opportunity to show that [the employer's] stated reason for [the plaintiff's] rejection was in fact pretext."   *Id.* at 804.   The Supreme Court has since clarified that a fact-finder's rejection of the employer's stated reasons for the negative employment decision does not necessarily establish pretext, but that the fact-finder must find "*both* that the reason was false, *and* that discrimination was the real reason."   *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original) (explaining that the "required finding [is] that the employer's action was the product of unlawful discrimination").

### *(1) Plaintiff's Prima Facie Case*

In the instant matter, there is a dispute as to whether the Plaintiff has established a *prima facie* case for certain of the positions he continues to contest.   NRCTC found that he did not meet the required minimum qualifications for the Human Resources Representative, Human Resources Assistant III, and the second-posted Administrative Associate positions.   The *prima facie* requirements are complicated in this case by the fact that NRCTC generally included language in its job postings stating that "an equivalent combination of education and related experience are acceptable," and indeed made such substitutions regularly.   (*E.g.*, PF&R at 18.)   The Plaintiff argues that his related experience should have been substituted for the required Human Resources background for the first two positions, just as NRCTC did for several selected candidates for these and other positions.   For the Administrative Associate position, NRCTC changed the

requirements between Mr. Bibbs's application for the position advertised in 2009 and the position advertised in 2012 to include experience with government funded training programs.   He argues that the position did not change, and if he qualified for the 2009 posting, he must have also qualified for the 2012 posting.   (Pl.'s Obj. at 24.)   Employers are free, however, to change the minimum requirements for a position without classifying it as a new position, and Mr. Bibbs clearly did not directly meet the minimum requirements for the 2012 posting of the Administrative Associate position.   However, Mr. Bibbs further argues that, as with the two Human Resources positions, he had relevant education and experience of the type that NRCTC frequently substituted for minimum requirements for white and/or female applicants.[3]

With respect to these three positions, the Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether substitutions for relevant experience or education were made in a discriminatory manner.   Whether Mr. Bibbs' experience is sufficiently related to qualify for a substitution is a distinctly factual inquiry to be decided by a jury.   All this Court is to consider at this stage is whether the Plaintiff has presented evidence that could lead a jury to find in his favor after weighing the evidence and making credibility determinations.   Mr. Bibbs has done so.   The Court makes no finding as to whether Mr. Bibbs has set forth a *prima facie* case for these positions, but holds that Mr. Bibbs has presented sufficient evidence, viewed in the light most favorable to him, to create a genuine issue of material fact to the extent the Defendants' motion is based on his failure to make a *prima facie* case.

---

3 For example, NRCTC substituted work experience in an "office setting" for the required eighteen months of post-secondary education for both selected candidates for the two Administrative Secretary positions.   (PF&R at 19–21, 26–28.)   For the Human Resources Representative position, NRCTC substituted experience as a staffing consultant and recruiter in the scientific field, combined with a Bachelor's Degree in Biology, for the required Bachelor's Degree in business administration, human resources, or a related field.   (PF&R at 18.)

14

NRCTC next contends that Mr. Bibbs failed to set forth a *prima facie* case for race-based discrimination for the two Administrative Secretary positions, which were ultimately filled with black female applicants.   Mr. Bibbs did not appear to object to the Magistrate Judge's proposed finding that he did not establish a *prima facie* case for race-based discrimination for those two positions, and this Court finds that summary judgment is appropriate for those claims.   Though Mr. Bibbs is black, applied and was qualified, and was rejected, NRCTC filled the positions with members of the same protected group.   *See Blue v. United States Dep't of Army*, 914 F.2d 525, 536 (4th Cir. 1990) (describing the *prima facie* requirements as demanding a showing that the employer either continued to seek applicants or filled the position with someone who did not share the plaintiff's protected trait).   The Court finds that the Defendants are entitled to summary judgment with respect to the Plaintiff's claims that it discriminated against him on the basis of his race by failing to hire him for the Administrative Secretary positions.

With respect to the remaining positions, NRCTC does not appear to contest that Mr. Bibbs has made a *prima facie* case.   Mr. Bibbs is black and male, he applied and was qualified for the advertised position, he was rejected and NRCTC filled the positions with females, all white with the exception of the two black female candidates hired for the two Administrative Secretary positions.

### (2) Pretext Analysis

NRCTC argues, in essence, that it hired the most qualified candidate for each position. Thus, the legitimate, nondiscriminatory reason for the negative employment decision regarding Mr. Bibbs was that he was not as qualified as other applicants.   While employers have discretion to determine the qualifications of applicants, an employer faced with an employment

15

discrimination suit who proffers the superior qualifications of those hired as its nondiscriminatory purpose does not immunize itself from review.[4]   *Accord Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 763 (4th Cir. 1998) (judgment vacated on other grounds) (finding that a plaintiff must offer evidence that his qualifications were superior to those of the selected candidate where an employer states that it hired the other candidate because he was the most qualified).

Mr. Bibbs' resume reveals that he has a Bachelor's degree, a Master's degree in Public Administration, and approximately ten years of experience working in administrative and clerical capacities at Georgia State University and at Mountain State University.   All of these qualifications are in addition to other work experience.   He has more education than most of the individuals hired, and more years of experience than many.   NRCTC argues that other candidates had more experience or training in the particular duties of each position, which Mr. Bibbs contests. There is no need for the Court to conduct an exhaustive comparison of Mr. Bibbs' qualifications to those of the individuals ultimately hired by NRCTC, despite the plethora of evidence and argument presented on that issue.   Such comparisons are precisely the type of determination a court cannot properly make on a motion for summary judgment.   It suffices to say that Mr. Bibbs' experience and education were at least comparable with the applicant pool and with those selected for these positions, such that a reasonable juror could find that he was, in fact, more qualified than the selected candidates.

---

4        The Magistrate Judge relied on cases holding that Title VII does not require employers to hire an equally-qualified minority candidate and that employers may exercise discretion in hiring for the proposition that "[t]he assertions of a Plaintiff alleging discrimination in hiring that he was more qualified than other applicants are therefore irrelevant."   (PF&R at 35.)   However, when an employer has presented superior qualifications as its legitimate nondiscriminatory motive, the plaintiff must be given an opportunity to demonstrate that the employer's reason is false as part of his pretext showing.   The employer is not required to hire the most qualified candidate, but the truth or falsity of an employer's proffered reason for not hiring a member of a protected class *is* relevant to an employment discrimination claim.

The remaining issue is whether the factual inquiry about the comparative qualifications of the Plaintiff and the selected candidates is material.   Mr. Bibbs objected to the Magistrate Judge's recommended finding that the candidate qualifications are not material without more evidence of discrimination than Mr. Bibbs has presented.   This Court finds the Plaintiff's objections well-founded.   Because there is a genuine issue of material fact as to whether NRCTC's proffered reason is false, and a finding that it is false could be sufficient for a jury to return a verdict in Mr. Bibbs' favor if it believes that the real reason was discrimination, summary judgment is inappropriate in this case.

In addition to his evidence that he is more qualified than the selected candidates, and thus, that NRCTC's proffered reason for not hiring him is false, Mr. Bibbs has presented additional evidence supporting a finding of intentional discrimination.   He has presented evidence that white and/or female candidates were treated differently when they filed late applications and when they did not directly meet the minimum qualifications for a position.[5]   Likewise, he has presented statistical evidence of the percentages of African Americans and males hired in various capacities in comparison to whites and females.   Although NRCTC has hired African Americans at rates roughly equivalent to the local population ratios,[6] Mr. Bibbs' statistics show that it has hired relatively few men in clerical or administrative positions.

Furthermore, in arguing that it followed its affirmative action policy, NRCTC stated that a black female candidate selected for an Administrative Secretary position "fulfills two categories –

---

[5]      The Defendants have presented evidence that the applications Mr. Bibbs contends were late were actually timely.   In light of the conflicting evidence, however, the Court considers this a fact question more appropriately decided by a jury charged with weighing evidence and making credibility determinations.

[6]      The parties continue to dispute whether NRCTC's percentages should be compared to West Virginia, in which case it has a higher percentage of African Americans, or to Raleigh County, in which case it has a lower percentage.   In either comparison, there is not a "gross disparity" between NRCTC's employment statistics and the local population.   *See, e.g. Hazelwood School District v. United States*, 433 U.S. 299, 307–308 (1977); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 340 note 20 (1977).

women and minority, while the Plaintiff only fulfills the minority category."   (Def.s' Reply at 12, Document 124.)   Given the overrepresentation of women in administrative and clerical positions at NRCTC, any suggestion that NRCTC has an official policy or custom favoring female candidates supports Mr. Bibbs' allegations of gender discrimination.   Mr. Bibbs states that "[t]here was only 1 black male employed by NRCTC in the clerical job category between 4-09 and 03-13," even though the overall number of employees more than doubled.   (Pl.'s Obj. at 10–11.) These facts and allegations all provide evidence that could lead a jury to find purposeful discrimination.

For Mr. Bibbs to prevail, a jury would need to find that NRCTC's stated reason of hiring the most qualified candidate was false *and* that its actual purpose was to discriminate.   *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).   A jury *could* find that NRCTC's purpose was to discriminate simply based on a finding that NRCTC hired a less qualified white female rather than Mr. Bibbs for any of the positions at issue.   *Id.* at 510–511 ("rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination… upon such rejection, "[n]o additional proof of discrimination is *required*") (emphasis in original); *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (distilling the principles in *St. Mary's* to explain that a fact-finder that rejects a defendant's proffered reasons is not compelled to find for the plaintiff, but *may* find discrimination solely based on the finding that the proffered reason was false).   Of course, a jury could also find that NRCTC hired a less qualified white female because the hiring committee did not like Mr. Bibbs personally, or because he performed poorly in interviews, or because a member of the hiring committee knew and liked the less qualified applicant, or because NRCTC unofficially preferred hiring part-time and student workers

for full-time positions – but those are findings for a jury to make and not appropriate at the summary judgment stage.

Based on the evidence and arguments presented in the filings thus far, a jury could find (a) that Mr. Bibbs was not as qualified as the selected applicants and was treated fairly in the application process; (b) that NRCTC did treat Mr. Bibbs unfairly and that he was more qualified than the selected candidates for some of the positions he applied for, but that NRCTC made its hiring decisions for reasons other than race-or-gender-based discrimination; or (c) that NRCTC discriminated against Mr. Bibbs in violation of Title VII and 42 U.S.C. § 1981.   The applicant's qualifications and other circumstantial evidence of discrimination qualify as genuine questions of material fact that must be weighed by a fact-finder.   The Defendants' motion for summary judgment is denied with respect to the Plaintiff's Title VII and 42 U.S.C. § 1981 discrimination claims, except as previously determined.

### B.  Retaliation

Mr. Bibbs next alleges that NRCTC refused to hire him in retaliation for filing his first EEOC complaint against it.   He alleges that NRCTC was "notified of this complaint on July 7, 2010."  (Pl's Mem. Resp. to Def.s' MSJ, at 1.)   After that, Mr. Bibbs applied for five of the positions at issue:   Administrative Secretary (posted August 2010); Human Resources Assistant III (original closing date September 2010); Records Assistant III (posted September 2011); Administrative Associate (posted March 2012); and Administrative Secretary (posted February 2012).   As previously established, he was interviewed for the two Administrative Secretary positions, but black female applicants were hired for both positions.   NRCTC substituted work experience for the otherwise minimum requirement of eighteen months of related post-secondary

education for both selected candidates.   (PF&R at 19–21; 26–28).   NRCTC states that "[t]he

Search Committee members for the various positions were unaware of the EEOC Complaints filed

by Plaintiff," and points out that the Plaintiff stated in his deposition that he did not know whether

the search committee members knew of his EEOC complaints.   (Def.s' Mem. MSJ at 32,

Document 116.)   In addition, NRCTC argues that the Plaintiff cannot show that he was injured by

any retaliation because he "never ranked as the top candidate for any of the positions for which he

met the minimum qualifications."   (*Id.* at 33.)

> The anti-retaliation provision contained in Title VII provides:

> > It shall be an unlawful employment practice for an employer to
> > discriminate against any of his employees or applicants for
> > employment…because he has opposed any practice made an
> > unlawful employment practice by this subchapter, or because he has
> > made a charge, testified, assisted, or participated in any manner in
> > an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

"To state a prima facie case of retaliation, [the plaintiff] must show (1) that he engaged in

a protected activity; (2) [the employer] acted adversely against him; and (3) the protected activity

was causally connected to the adverse action.   *Holland v. Washington Homes, Inc.*, 487 F.3d 208,

218 (4th Cir. 2007); *see also Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997).   The causal

connection requires proof that the adverse employment action took place "*because* the plaintiff

engaged in protected activity."   *Holland*, 487 at 218 (quoting *Dowe v. Total Action Against

Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998)) (emphasis in original).   Knowledge

by the decision-maker of the plaintiff's protected activity is logically necessary to prove a causal

connection.   *Id.*   As in discrimination cases, once a *prima facie* case is made, the burden shifts to

the employer "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory

reason for its actions."   *Id.* (quoting *Beall*, 130 F.3d at 619).   If the employer meets its burden of production, "the burden shifts back to [the plaintiff] to show that the reason is mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct.   *Id.* (quoting *Beall*, 130 F.3d at 619); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).   Temporal proximity between the protected activity, or hearings or filings related to the protected activity, and the adverse employment action may provide a type of indirect proof of retaliation.   *Carter,* 33 F.3d at 460 (citing with approval *Muehlhausen v. Bath Iron Works,* 811 F.Supp. 15, 20 (D. Me. 1993), in which the court found causation where the adverse employment action took place within six months of the protected activity).

As in most retaliation cases, the dispute in the present case surrounds the third prong of the *prima facie* case: the causal connection between the protected activity and the adverse employment action.   Mr. Bibbs undisputedly engaged in a protected activity by filing EEOC complaints, and NRCTC undisputedly did not hire him for positions for which he applied and was qualified.   NRCTC contends that there could be no retaliation because (it claims) members of the search committee were not informed of the EEOC complaint.   NRCTC admits, however, that Leah Taylor, the Chief Human Resources Officer, knew of Mr. Bibbs's EEOC complaint.   (Def.s' Mem. SMJ, Ex. 2, Document 116-1.)   The evidence indicates that Ms. Taylor played an instrumental role in hiring decisions as Chief Human Resources Officer at NRCTC.   (*See* Pl.'s Mem. Resp. in Opp. to Def.s' MTD, Ex. 1–74, Document 90-1, 90-2) (showing that Ms. Taylor coordinated interviews, communicated with members of the selection committee and Human Resources staff, and sometimes determined whether an applicant met the minimum requirements of a position.)   Whether others involved in the hiring process knew of the EEOC complaint will be

a question of fact requiring credibility determinations on the part of the jury.  Ms. Taylor's knowledge suffices at this stage to establish a genuine issue of material fact.

Furthermore, the Plaintiff states that he "was interviewed for 2 positions, both of which were shortly after the defendants were aware of his EEOC complaints of discrimination.   In both instances, black females…who did not meet the minimum requirements were given 'substitutions,' [and were hired.]"   (Pl.'s Obj. at 12.)   By presenting all of the above evidence, Mr. Bibbs is inviting an inference that NRCTC attempted to cover its race and gender discrimination against him by interviewing him, but hiring black female candidates.   Such inferences, however, must be weighed and ultimately accepted or rejected by a jury.

NRCTC next presents evidence that it hired the most qualified candidate for each position, satisfying its burden of production under the burden-shifting standard for retaliation claims.   As detailed in Section III.A.2, *supra*, the issue of pretext is particularly ill-suited to resolution on summary judgment because it implicates questions of fact, inference, and credibility.   Mr. Bibbs has presented sufficient evidence of his own qualifications compared to the qualifications of those hired to create a genuine issue of material fact with regard to NRCTC's claim that it hired the most qualified candidates for each position.   Viewing all of the evidence in the light most favorable to the Plaintiff as the non-moving party, a jury could find that Mr. Bibbs was, indeed, more qualified than the selected candidates, and that NRCTC's real reason for not hiring him was retaliation for filing EEOC complaints against them.   Or a jury could arrive at the opposite conclusion, as advocated by the NRCTC.   Whichever outcome, the fact remains that the issue is one left squarely to the province of a jury.   Thus, the Defendants' motion for summary judgment is denied as to the Plaintiff's claim of retaliation pursuant to Title VII.

## IV.    CONCLUSION

Wherefore, after careful consideration, the Court hereby **ORDERS** that the Plaintiff's *Objections* (Document 155) to the Magistrate Judge's *Proposed Findings and Recommendation* (Document 151) are **SUSTAINED IN PART AND OVERRULED IN PART.**   The Court **ORDERS** that the Defendants' *Motion for Summary Judgment* (Document 115) be **GRANTED** with respect to the race discrimination claim for the two Administrative Secretary Positions.   To the extent the Plaintiff objects to summary judgment with respect to the remaining positions to which he applied, his objections are **OVERRULED** and the Court **ORDERS** that summary judgment be **GRANTED** to the Defendants with respect to any positions not discussed in this Memorandum Opinion and Order.   The Plaintiff did not contest those positions in either his Response to the Defendants' Motion for Summary Judgment or in his Objections to the PF&R, beyond stating that "he does not concede that summary judgment is appropriate for [the nine positions not addressed.]"   (Pl.'s Obj. at 13.)   Thus, the Plaintiff has not established a genuine issue of material fact with respect to those positions.   The Court further **ORDERS** that the Fourteenth Amendment claim that the Plaintiff "is no longer pursuing" be **DISMISSED**.   (Pl.'s Mem. Resp. to Def.s' MSJ at 2.)

The Court **ORDERS** that Defendants' Motion for Summary Judgment be **DENIED** with respect to the Plaintiff's Title VII and Section 1981 gender discrimination claims for the following eight positions: Administrative Associate (posted October 2009); Financial Aid Counselor (posted December 2009); Human Resources Representative (posted January 2010); Administrative Secretary (posted August 2010); Human Resources Assistant III (original closing date of

23

September 20, 2010); Records Assistant III (posted September 2011); Administrative Associate (posted March 2012); and Administrative Secretary (posted February 2012). Further, the Court **ORDERS** that the Defendants' Motion for Summary Judgment be **DENIED** with respect to the Plaintiff's Title VII and Section 1981 race-based discrimination claims for the positions listed previously, with the exception of the two Administrative Secretary postings.

The Court further **ORDERS** that the Defendants' Motion for Summary Judgment be **DENIED** with respect to the Plaintiff's claim of retaliation pursuant to 42 U.S.C. 2000e-3(a). The Plaintiff's retaliation claim may go forward with respect to all positions for which his application was considered after Leah Taylor became aware of his EEOC complaint, including: Administrative Secretary, posted August 2010; Human Resource Assistant III, with an original closing date of September 2010; Records Assistant III, posted September 2011; Administrative Secretary, posted March 2012; and Administrative Associate, posted March 2012.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        December 2, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

24